IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID EISENSTADT, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-1196-O |
| | § | |
| TELEPHONE ELECTRONICS | § | |
| CORPORATION, et al., | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following:

1.  Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Partial Judgment on the Pleadings for Failure to State a Claim Upon Which Relief Can Be Granted or, in the Alternative, Failure to Plead Fraud With Particularity (Defs' Mot.) (Doc. # 93), filed January 18, 2008;

2.  Plaintiffs David Eisenstadt and Richard Borin's Response to Motion for Partial Judgment on the Pleadings (Pls' Resp.) (Doc. # 98), filed February 22, 2008;

3.  Reply in Support of Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Partial Judgment on the Pleadings for Failure to State a Claim Upon Which Relief Can Be Granted or, in the alternative, Failure to Plead Fraud With Particularity (Defs' Reply) (Doc. # 103), filed March 7, 2008;

4.  Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Summary Judgment (Defs' Mot. for SJ) (Doc. # 112), filed June 6, 2008;

4.  Brief in Support of Joint Motion of Telephone Electronics Corporation, Joseph D.

1

Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Summary Judgment (Defs' Bf.) (Doc. # 113), filed June 6, 2008;

5. Appendix in Support of Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Summary Judgment (Defs' Appx.) (Doc. # 114), filed June 6, 2008

6. Plaintiffs' Response in Opposition to the Joint Motion for Summary Judgment of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. (Pls' Bf. in Resp.) (Doc. # 123), filed July 3, 2008;

7. Plaintiffs' Response Brief in Opposition to TEC Defendants' Motion for Summary Judgment (Pls' Bf. in Resp.) (Doc. # 124), filed July 3, 2008;

8. Appendix in Support of Plaintiffs' Response in Opposition to the TEC Defendants' Joint Motion for Summary Judgment (Pls' Appx.) (Doc. # 125), filed July 3, 2008; and

9. Reply of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. to Plaintiffs' Response to Motion for Summary Judgment (Def's Reply re SJ) (Doc. # 131), filed July 25, 2008.

Having reviewed and considered these filings, as well as oral arguments presented at a hearing on this matter, in light of the applicable law, the Court finds that the Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Partial Judgment on the Pleadings for Failure to State a Claim Upon Which Relief Can Be Granted or, in the alternative, Failure to Plead Fraud With Particularity and the Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Summary Judgment should be and are hereby **DENIED**.

I.      Factual Background

        This case concerns several individuals and telecommunications companies involved in

various aspects of the business of selling prepaid long distance telephone cards.  Defs' Appx. at

51; Doc. No. 85 (3:06-CV-1196-O) (N.D. Tex. Nov. 5, 2007) (herein after referred to as "Second

Amended Complaint").  David Eisenstadt and Richard Borin ("Plaintiffs") are former officers

and directors of  Star Telecom Network, Inc. ("STN"), a California company which is now

bankrupt but was formerly in the business of marketing and distributing prepaid phone cards in

western parts of the United States.  *Id.*  Plaintiffs bring the present action as assignees of certain

claims previously held by the STN bankruptcy estate.  Defs' Appx. at 51-52; Second Amended

Complaint.

        Defendant Telephone Electronics Corporation ("TEC") is a privately-owned Mississippi

telecommuications company with numerous subsidaries, including TecNet, Inc. ("TecNet"), a

Mississippi company with its principal place of business in Texas.  Defs' Appx. at 51-52.

TecNet is now bankrupt, but was formerly in the business of purchasing long distance service

from major carriers, including MCI and Sprint.  *Id.* at 2, 53.  TecNet owned circuits through

which telephone calls would be made, as well as switches which would route calls.  *Id.* at 2.

TecNet was the parent company of Enhanced Global Convergence Services, Inc. ("ECGS"), a

Mississippi corporation, now bankrupt, that was formerly in the platform business in the prepaid

phone card industry.  *Id.* at 2, 52, 164-171.  Distributors sold prepaid phone cards at retail outlets

and the purchasers of the cards dialed a toll free number printed on the card.  *Id.* at 2.  This

would access the EGCS platform, which would prompt the caller for an authorization code,

determine whether the code was valid, determine whether any minutes were left on the card and,

if so, debit the card for the minutes used.  *Id.* at 2.

The individual defendants, Joseph D. Fail ("Fail"), Walter J. Frank, Jr. ("Frank"), and Cloyce C. Clark, Jr. ("Clark"), are former officers and directors of TEC, TecNet, and EGCS.[1] Defs' Appx. at 2.  The parties do not dispute that Defendant Fail is a resident of Mississippi, and Defendants Clark and Frank are residents of Texas.  Second Amended Complaint; Pls' Appx. at 107-108; Pls' Bf. in Resp. at 24; Defs' Bf. at 15.

Plaintiffs' claims also involve DigiTec, another distributor of prepaid phone cards.  *See* Defs' Appx. at 53; Second Amended Complaint.  It is alleged that Defendants Clark, Fail, and Frank, individually or through corporations they owned or controlled, owned a substantial portion of DigiTec.  *Id.*; Pls' Appx. at 64-68.

On November 15, 2002, STN and EGCS entered into an agreement (the "STN/EGCS Agreement") for EGCS's platform services.  Defs' Appx. at 2-3.  This case involves allegations relating to this business relationship, including claims that TEC, Fail, Frank, and Clark (collectively,  "Defendants"), have engaged in fraud, aiding and abetting, tortious interference with a contract, and tortious interference with a business opportunity.  *Id.*; Second Amended Complaint.  Specifically, Plaintiffs allege that STN was fraudulently induced into a purportedly "exclusive" distribution agreement with EGCS in that the STN/EGCS agreement prohibited EGCS from allowing sales to DigiTec to exceed the level of $100,000 per month in business, the level of business EGCS was conducting with Digitec at the time of the STN/EGCS Agreement. *Id.*  Plaintiffs contend that Defendants misrepresented the exclusivity of the relationship between EGCS and STN, in addition to making other actionable misrepresentations and omissions, and

---

[1]  Defendant Clark was not an officer or director of TEC.  Def's Appx. at 52.

that Defendants caused EGCS's sales to Digitec to exceed $100,000 immediately after execution of the STN/EGCS Agreement.  *Id.*

II.     Procedural Background

This case has a complex procedural history, involving a number of lawsuits and bankruptcies, starting with the bankruptcy of TecNet, Inc.  On March 30, 2004, TEC sold all of the stock of TecNet to ePIN Services LLC ("ePIN").  Defs' Appx. at 3.  ePIN then initiated a bankruptcy action for TecNet in the Northern District of Texas, Dallas Division, and a trustee of TecNet's assets was appointed.  *Id.*  On July 14, 2004, STN filed for bankruptcy in the Central District of California.  *Id.* at 11.  On April 5, 2006, a settlement was reached in the TecNet bankruptcy action.  Defs' Appx. at 13, 164-171.

On May 18, 2005, the TecNet Trustee filed suit against Defendants and others alleging that TecNet was the alter ego of DigiTec.  Def's Appx. at 12.  This action was settled.  *Id.*

On March 17, 2006, Plaintiffs filed a lawsuit against Defendants and others in the Southern District of Mississippi (the "Mississippi action") alleging claims of, among other things, wrongful interference with a contract and tortious interference with a business relationship.  Def's Appx. at 12; Doc. No. 1 (3:06-CV-1196-O) (N.D. Tex. Mar. 17, 2006).  Defendants moved for a change of venue, and in June 2006, the Mississippi action was transferred to the Northern District of Texas and assigned the above-referenced civil action number.  *See* Doc. No. 21 (3:06-CV-1196-O) (N.D. Tex. Jun. 5, 2006); Doc. No. 24 (3:06-CV-1196) (N.D. Tex. Jun. 26, 2006).  On August 15, 2006, Plaintiffs amended the complaint, bringing claims for interference with a contract, interference with a business opportunity, fraud,

and aiding and abetting.[2]

On November 15, 2006, Plaintiffs filed another lawsuit against Defendants and others in the Central District of California (the "California action"), alleging claims for fraud/deceit, aiding and abetting, and for violations of the federal Racketeer Influenced & Corrupt Organizations Act ("RICO"). Defs' Appx. at 13; Doc. No. 1 (3:07-CV-860-M) (N.D. Tex. Nov. 15, 2006). On May 15, 2007, the California action was transferred to the Northern District of Texas, and was consolidated with this action on June 4, 2007. *See* Doc. No. 39 (3:07-CV-860-M) (N.D. Tex. May 15, 2007); Doc. No. 52 (3:07-CV-860-M) (N.D. Tex. Jun. 4, 2007).

On November 5, 2007, Plaintiffs filed their second amended complaint, which is the live pleading in this action, asserting claims for fraud, aiding and abetting, tortious interference with a contract, and tortious interference with a business opportunity. Plaintiffs are not pursuing the RICO claims originally asserted in the California action. Second Amended Complaint.

On January 18, 2008, Defendants filed their joint motion for partial judgment on the pleadings for failure to state a claim or, in the alternative, for failure to plead fraud with particularity, asking the Court to dismiss Plaintiff's Second Amended Complaint. Before the Court ruled on this motion, on June 6, 2008, Defendants filed their motion for summary judgment, requesting judgment on all of Plaintiffs' claims.

These issues have been briefed by the parties. In addition, the Court heard oral arguments regarding this motion on September 18, 2008. *See* Doc. No. 169 (3:06-CV-1196-O)

---

[2] The Court notes that Plaintiffs' first amended complaint is entitled "First Amended Complaint for: (1) Interference with Contract; and (2) Interference with Business Opportunity." This title suggests that these are the only two causes of action Plaintiffs alleged in the amended complaint. However, the text of the complaint includes claims for fraud and aiding and abetting, entitled, respectively, Plaintiffs' "third" and "fourth" claims for relief. *See* Doc. No. 32 (3:06-CV-1196-O) (N.D. Tex. Aug. 15, 2006).

(N.D. Tex. Sept. 18, 2008).  This matter is now ripe for determination.

III.     Preliminary Procedural Matter

The Court **DENIES AS MOOT** Defendants' joint motion for partial judgment on the

pleadings for failure to state a claim or, in the alternative, for failure to plead fraud with

particularity (Doc. # 93).  Because Defendants have now brought a motion for summary

judgment and the Court examines evidence beyond the pleadings, the correct standard of review

is that of a motion for summary judgment rather than a motion to dismiss for failure to state a

claim.  *See Austin v. Belton,* No. 3:01-CV-421-P, 2002 WL 87345 at *1 (N.D. Tex. Jan. 16,

2002).

IV.      Choice of Law

Before turning to Defendants' motions to dismiss and for summary judgment, the Court

will determine what law applies to Plaintiffs' claims.  The parties have briefed their arguments

on choice of law in connection with both the motion to dismiss and motion for summary

judgment, and also made arguments on this issue at the hearing held September 18, 2008.  The

Court considers these arguments, as well as the relevant evidence produced with the parties'

summary judgment filings, in determining what law applies to Plaintiffs' claims.

  A.   **Legal Standards**

This case is a diversity action.  Under *Erie R. Co. v. Tompkin*, 304 U.S. 64 (1938),

federal courts in diversity of citizenship cases are to apply the laws of the state in which they sit,

including the state's conflict rules.  However, when a case is transferred pursuant to 28 U.S.C.

1404(a), a transferree district court is obligated to apply the substantive state law that would

have been applied if there had been no change of venue.  *Van Dusen v. Barrack*, 376 U.S. 612,

639 (1964).  Thus, while federal courts sitting in diversity usually apply the substantive law of a

forum state, including the forum state's conflicts rules, where a case has been transferred for the

convenience of the parties, federal courts apply the law/conflicts rules of the state from which

the case was transferred.  *Id.*

### B.  Parties' Contentions

Defendants contend that there is no conflict in the laws that may apply to this case, and

therefore Texas law should be applied by this Court.  Defs' Bf. at 11.  Specifically, Defendants

contend that the elements of fraud, tortious interference with prospective business, and tortious

interference with a contract are the same under Mississippi, California, and Texas law.[3]  *Id.* at

10-13.

Defendants argue in the alternative that, assuming a conflict, Mississippi's choice of law

principles would apply and result in the ultimate application of Texas law to Plaintiffs'

substantive claims.  *Id.* at 14.  Defendants note that the order transferring the Mississippi action

to this Court stated that "most of the alleged wrongdoing occurred in Texas" and that Plaintiffs'

complaint alleges that misconduct occurred in Texas.  *Id.*

Plaintiffs respond that there are conflicts between the laws of California and Texas.

Specifically, Plaintiff contends that (1) fraud in California, unlike Texas, can be based on

concealment or non-disclosure in addition to false representation; (2) California recognizes a

duty to disclose facts in commercial settings not recognized under Texas law; and (3) California

law does not cap punitive damages, while Texas law does.  Pls' Bf. in Resp. at 20-21.  Plaintiffs

---

[3]  While Defendants state that there is no "conflict," between the laws that may apply to
Plaintiffs' claims, Defendants note a few  "differences" between Texas and Mississippi law regarding
claims for tortious interference with prospective business.  *See* Defs' Bf. at 11-12.

contend that California substantive law applies because of California's interest in preventing defrauding of its citizens and businesses and in providing a remedy to defrauded California plaintiffs, and also because California's conflicts rules presume application of California law absent a compelling justification. *Id.* at 23-25. Plaintiffs further contend that California substantive law applies if Mississippi's conflicts rules are applied because California has the most significant relationship to this action. *Id.* at 25-26.

**C.  Analysis**

As previously noted, the Mississippi action was transferred to this Court, and then the California case was transferred and consolidated. Generally, when a case is transferred and consolidated, consolidation does not strip cases of their individual identities. *Boardman Petroleum v. Federated Mutual Ins. Co.*, 135 F.3d 750, 752 (11ᵗʰ Cir. 1998); Fed. R. Civ. P. 42. Thus, to the extent the original Mississippi and California actions can be identified and treated individually, the Court finds that Mississippi law applies to claims transferred from Mississippi and California law applies to claims transferred here that were alleged in the California action. *See Fuji Elec. Corp. Fo Am. v. Fireman's Fund Ins.*, No. 9:05-CV-27, 2005 WL 3447889 at *2 (E.D. Tex. Dec. 15, 2005) (where, after consolidating a California diversity case with a case proceeding in Texas, the court noted that Texas law applied to claims originally filed in Texas, and California law applied to the claims originating in California).

1.  Tortious Interference Claims

At a hearing held on September 18, 2008, Plaintiffs represented to the Court that they have abandoned their tortious interference claims against all Defendants except for Defendant Clark. *See* Doc. No. 169 (3:06-CV-1196-O) (N.D. Tex. Sept. 18, 2008). Accordingly, the

Court considers what law applies for these claims brought against Defendant Clark.

The complaints in the Mississippi and California actions, as well as the amended complaints filed in this Court before and after consolidation, demonstrate that Plaintiffs' tortious interference claims were transferred here from the Mississippi action. *See* Doc. No. 1 (3:06-CV-1196-O) (N.D. Tex. Mar. 17, 2006) (Original complaint filed in Mississippi action); Doc. No. 1 (3:07-CV-860-M) (N.D. Tex. Nov. 15, 2006) (Original complaint filed in California); Doc. No. 32 (3:06-CV-1196-O) (N.D. Tex. Aug. 15, 2006) (First Amended Complaint, filed in this action prior to transfer/consolidation of California action); Second Amended Complaint. No claims of tortious interference were ever pending in California. *Id.* Accordingly, the Court finds that Mississippi law, including Mississippi's conflict rules, applies to Plaintiffs' tortious interference claims. *See Van Dusen*, 376 U.S. at 639.

### a. Tortious Interference with Business Opportunity

Next, this Court must determine whether a conflict of law exists with respect to Plaintiffs' tortious interference with a business opportunity claim under Mississippi, California, and Texas law. Plaintiffs have not identified a conflict, and Defendant contends that the elements of tortious interference with business opportunity are the same under the relevant states' laws, noting that to succeed on a such a claim, Plaintiffs must prove the following under Mississippi, California, and Texas law: (1) there was a reasonably probability Plaintiffs would have entered into a business relationship with a third person, (2) Defendant intentionally interfered with the relationship, (3) Defendant's conduct was independently tortious or unlawful, (4) the interference proximately caused Plaintiffs' injury, and (5) Plaintiffs suffered actual damage or loss. *See* Pls' Bf. in Resp. at 20-26; Defs' Bf. at 10-11; *Wal-Mart Stores v. Sturges*,

52 S.W.3d 711, 726 (Tex. 2001); *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App.4th 842, 845

(1993); *Cenac v. Murray,* 609 So.2d 1257, 1272 (Miss. 1992); *Bateman v. Gray*, 963 So.2d

1284, 1287 (Miss. Ct. App. 2007); *GN Hello Direct, Inc. v. Plantronics, Inc*., No. H025605,

2004 WL 1775674 at *19 (Cal. Ct. App. Aug. 10, 2004); *Hopewell Enter., Inc. v. Trustmark*

*Nat'l Bank*, 608 So.2d 812, 819 (Miss. 1996); *McBride Consulting Servs., LLC v. Waste Mgmt of*

*Miss., Inc.*, 949 So.2d 52, 55-56 (Miss. Ct. App. 2006).  Though the basic elements of Plaintiffs'

tortious interference claims are the same under Mississippi, California, and Texas law,

Defendant's briefing points out a few "differences" between Texas and Mississippi law

regarding tortious interference with a business opportunity.  Defs' Bf. at 11-12.  In footnotes,

Defendant states that under the proximate causation element, Texas requires a plaintiff simply to

prove that the harm was foreseeable and a cause in fact, which is a lesser burden than the

"calculated" to cause damage showing that Mississippi requires, citing *Western Invs. v. Urena*,

162 S.W.3d 547, 551 (Tex. 2005).  Defs' Bf. at 12, n.3.  Defendant also notes that Mississippi

law requires a plaintiff to prove malice by showing the act was committed with the unlawful

purpose of causing damage and loss, without right or justifiable cause on the part of the

defendant, citing *Bateman v. Gray*, 963 So.2d 1284, 1287 (Miss. App. 2007).  Defs' Bf. at 12,

n.4.

　　　　While the basic elements of what a plaintiff must prove to show tortious interference with

a business opportunity are the same under Mississippi, California, and Texas law, the Court finds

that the differences between the laws of these states indicates that a choice of law analysis is

necessary.  As Defendant has pointed out, Mississippi law requires a showing that a defendant's

actions were "calculated" to cause damage, committed with the unlawful purpose of causing

damage and loss, which is a greater showing than is required under Texas law. *Bateman*, 963 So.2d at 1287; *Western Invs.*, 162 S.W.3d at 551. Accordingly, the Court finds it necessary to apply Mississippi conflict rules to determine what law applies to Plaintiffs' tortious interference with business opportunity claim.

Choice of law under Mississippi's conflicts rules involves a three step process. *Hancock v. Watson*, 962 So.2d 627, 629 (Miss. Ct. App. 2007). First, the Court must determine whether the conflicting laws are substantive or procedural. *Id.* Mississippi applies its own procedural laws. *Id.* The Court must then classify the substantive area of law – contract, tort or property– applicable to the conflicting laws, as each area of law has its own choice of law provisions. *Id.* Finally, the Court must apply the appropriate analytical provisions to the conflict. *Id.* at 629-30.

Mississippi courts apply the "center of gravity" or "most significant relationship" test set forth in Restatement (Second) of Conflicts of Law § 145 to tort claims, such as tortious interference with business opportunity. *Id.* at 630. The contacts to be taken into account in applying this test include the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Id.* Mississippi courts evaluate these contacts according to their relative importance with respect to the issue. *Powe v. Roy Anderson Const. Co.*, 910 So.2d 1197, 1201 (Miss. 2005). In making choice of law decisions, Mississippi Courts also consider factors listed in § 6 of the Restatement (Second) Conflicts of Laws, including: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular

issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *See Dale v. Ala Acquisitions I, Inc.*, 434 F.Supp.2d 423, 431 (S.D. Miss. 2006).

The Court does not find that the parties' relationship was 'centered' in any particular state. The alleged harm to Plaintiffs manifested in California, where Plaintiffs reside and STN was incorporated, while the conduct causing Plaintiffs' injury occurred predominantly in Texas, where Defendant Clark resides. *See* Second Amended Complaint; *see also* Defs' Appx. at 57 (Transfer Order, where Judge Sumner noted that "this case has very little connection with Mississippi: most of the alleged wrongdoing occurred in Texas"), 186-88 (Statement of Eisdenstadt, noting meetings in Texas); Pls' Bf. in Resp. at 25 (noting that misrepresentations and nondisclosures were the result of meetings in Texas); Pl's Resp. at 11 (stating that Clark is a resident of Texas and that Plaintiffs have alleged that some acts relating to the fraudulent scheme were committed in Texas); Pl's Appx. at 155. (Non-party Wilkinson's testimony that Clark, a Texas resident, told Wilkinson to terminate EGCS's contract with STN).

Considering the remaining Restatement (Second) of Conflicts of Law § 145 factors (place where the injury occurred, the place where the conduct causing the injury occurred, and residence of the parties) in light of the factors listed in § 6 of the Restatement (Second) Conflicts, the Court finds it appropriate to apply Texas law to Plaintiffs' claim for tortious interference with a business opportunity. Though California has relevant contacts with this action, the Court finds Texas has a more significant relationship. Here, a resident of Texas is accused of committing a tort while in the state of Texas. The Court finds that both the state of Texas and

the resident would reasonably expect the resident defendant would be judged pursuant to the laws of Texas. Tort law provides a remedy for victims of both intentional and negligent acts in breach of duty that the law imposes. *See Black's Law Dictionary* (7th ed. 1999). Here, then it can reasonably be expected that a court would look to Texas law to define any duty Defendant Clark may have to Plaintiffs. Accordingly, the Court finds that, on balance, Texas is the state with the most significant relationship to this action, and will apply Texas law to Plaintiffs' tortious interference with business opportunity claim.

**b. Tortious Interference with Contract**

Next, this Court must determine whether a conflict of law exists with respect to Plaintiffs' tortious interference with a contract claim under Mississippi, California, and Texas law. The parties have not identified any conflict with respect to this claim, and the Court is not aware of any conflict. Accordingly, finding no conflict, the Court will apply the law of Mississippi to Plaintiffs' tortious interference with contract claim, as Mississippi law is the law that would be applied by the Mississippi court that transferred this claim here. *See Van Dusen*, 376 U.S. at 639.

2. Fraud/Aiding and Abetting

The complaints filed in the Mississippi and California actions demonstrate that Plaintiffs pursued fraud and aiding and abetting claims in both the Mississippi and California actions prior to transfer of these cases here. *See* Doc. No. 1 (3:06-CV-1196-O) (N.D. Tex. Mar. 17, 2006); Doc. No. 1 (3:07-CV-860-M) (N.D. Tex. Nov. 15, 2006); Doc. No. 32 (3:06-CV-1196-O) (N.D. Tex. Aug. 15, 2006); Second Amended Complaint. Since the Mississippi and California fraud and aiding and abetting claims are nearly identical, involve the same parties, and have been

consolidated in this action, the Court finds that only one state's law may be applied to these claims. *See Boardman Petroleum, Inc.*, 135 F.3d at 752-53 (while, generally, consolidation does not strip cases of their individual identities, in some consolidated cases only one state's law may be applied).

When a consolidated case requires the application of one state's laws, the Court first considers whether the choice-of-law provisions governing the separate lawsuits require application of different state substantive law. *Id.* Put another way, if both Mississippi and California conflicts rules dictate that the same state's law applies, the Court will apply that law. In the absence of a conflict, both Mississippi and California apply its own substantive law. *See S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (Cal. Ct. App. 1981); *Rasidescu v. Midland Credit Management, Inc.*, 496 F.Supp.2d 1155, 1159 (S.D. Cal. 2007); *Van Dusen*, 376 U.S. at 639.

### a. Fraud

Here, Plaintiffs contend that there is a conflict between the elements of fraud under California and Texas law. Pls' Bf. in Resp. at 20. Specifically, Plaintiffs argue that fraud in California includes concealment and non-disclosure in addition to affirmative misrepresentation. *Id.* Plaintiffs further argue that California courts recognize a duty to disclose facts in commercial settings not recognized in Texas. *Id.* at 20-21. Specifically, Plaintiffs state that California courts recognize the Restatement (Second) of Torts § 551, regarding the duty to disclose in commercial settings, while Texas courts have not recognized § 551. *Id.* at 20-21. Defendants argue that there is no conflict requiring a conflict analysis and therefore Texas law applies. Defs' Reply at 2-4.

The Court finds that there is no conflict between the laws of California and Texas regarding Plaintiffs' fraud claims. Both Texas and California courts have recognized that fraud includes both affirmative misrepresentation as well as non-disclosure where there is a duty to disclose. *Compare Bradford v. Vento*, 48 S.W.3d 749, 754-44 (Tex. 2001); *Dorsey v. Portfolio Equities, Inc.*, No. 07-10705, 2008 WL 3274082 (5th Cir. Aug. 11, 2008) (stating that under Texas law, for there to be actionable nondisclosure fraud, there must be a duty to disclose, which may arise where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue), with *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 563 (9th Cir. 1991) (applying California law) (elements of concealment include suppression of a material fact by one who is bound to disclose it or gives information of other facts which are likely to mislead for want of communication of that fact with intent to deceive ).

Similarly, California cases citing  Restatement (Second) of Torts § 551 do not support Plaintiffs' assertion that California law requires disclosure of information in commercial settings not recognized under Texas law.  *See Chamberlan v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1144 (N.D. Cal. 2005) (regarding obligation under the Consumers Legal Remedies Act, not common law fraud); *Malcome v. Farmers New World Life Ins. Co.*, 4 Cal.App.4th 296, 303 (Cal. Ct. App. 1992) (where court found that plaintiff did not allege defendant breached any duty of disclosure); *Westrick v. State Farm Ins.*, 137 Cal.App.3d 685, 689-693 (Cal. Ct. App. 1982) (where court found insured had a duty to disclose to insured, but noted that the quasi-public nature of the insurer's obligation imposes a duty of good faith and fair dealing, which requires the insurer to give at least as much consideration to the insured's interest).  Instead, these cases demonstrate that for nondisclosure to be actionable under both Texas and California law, there must be a duty

to disclose arising from the relationship between the parties, and that the elements of fraud in Texas and California are substantially the same. *See Limandri v. Judkins*, 52 Cal.App.4th 326, 337-38 (Cal. Ct. App. 1997) (stating that where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose). Accordingly, the Court finds that there is no conflict between the laws of California and Texas with respect to Plaintiffs' fraud claims. Finding no conflict, the Court concludes that Mississippi, one of the courts from which Plaintiffs' fraud claims were transferred, would require application of Mississippi law to Plaintiffs' fraud claims, while California, which also transferred Plaintiffs' fraud claims, would require application of California law to these claims.[4]

### b. Aiding and Abetting

Next, this Court must determine whether a conflict of law exists with respect to Plaintiffs' aiding and abetting claims under Mississippi, California, and Texas law. The parties have not identified any conflict with respect to Plaintiffs' aiding and abetting claims, and the Court is not aware of any conflict. Accordingly, finding no conflict, the Court concludes that Mississippi would require application of Mississippi law to Plaintiffs' aiding and abetting claims, while California would require application of California law to these claims.

---

[4] The Court notes that Defendants assert that Texas law should be applied if there is no conflict, citing *Fuji Elec. Corp. Fo Am. v. Fireman's Fund Ins.*, No. 9:05-CV-27, 2005 WL 3447889 at *2 (E.D. Tex. Dec. 15, 2005). Defs' Reply at 2-4. In *Fuji*, the court consolidated a California diversity case with a case proceeding in Texas. The court noted that Texas law applied to claims originally filed in Texas, and California law applied to the claims originating in California. Finding no conflict between Texas and California law, the Court applied Texas law for convenience. Unlike *Fuji*, in this case none of Plaintiffs' claims were originally filed in Texas. The Court is bound to apply the law of one of the transferor courts, either California or Mississippi, and cannot apply Texas law to these claims unless directed to do so under California or Mississippi law.

### c. Interests Analysis for Fraud and Aiding and Abetting claims

Because Mississippi and California conflicts rules require application of different state law to Plaintiffs' fraud and aiding and abetting claims, but only one state's law may be applied to these claims in this case, the Court must choose which state's law to apply. In determining which transferor court's law to apply, courts balance the interests of each state in having its law apply and apply the law of the state with greater interests. *See Boardman Petroleum, Inc.*, 135 F.3d at 753-54; *Bott v. Am. Hydrocarbon Corp.*, 441 F.2d 896, 900 (5th Cir. 1971).

The Court finds that California has greater contacts to this action than Mississippi. Plaintiffs are residents of California, and the Plaintiffs' alleged injury manifested in California, where STN went bankrupt. Defs' Appx. at 51-52; Second Amended Complaint. In contrast, Mississippi's connection to the case is that Defendant Fail is a Mississippi resident and Defendant TEC is a Mississippi corporation. Def's Appx. at 51-52; Defs' Bf. at 15; Second Amended Complaint. There is no evidence demonstrating that any wrongdoing occurred in Mississippi. The Court finds that because California has a more substantial relationship with this action, California has a greater interest in having its laws applied to Plaintiffs' fraud and aiding and abetting claims than Mississippi. Accordingly, the Court concludes that California law applies to Plaintiff's fraud and aiding and abetting claims.

### 3. Exemplary Damages

Like Plaintiffs' fraud and aiding and abetting claims, Plaintiffs requested punitive damages in both the Mississippi and California actions prior to transfer. *See* Doc. No. 1 (3:06-CV-1196-O) (N.D. Tex. Mar. 17, 2006); Doc. No. 1 (3:07-CV-860-M) (N.D. Tex. Nov. 15,

2006); Doc. No. 32 (3:06-CV-1196-O) (N.D. Tex. Aug. 15, 2006); Second Amended Complaint. The Court finds that only one state's law regarding punitive damages may be applied in this consolidated case, and must determine which law to apply.

Unlike the law regarding fraud, the parties have identified a valid conflict between the laws of Texas, which caps punitive damages, and California, which does not cap punitive damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.008; CAL. CIV. CODE § 3294. Accordingly, the Court must determine what law would apply under California and Mississippi's conflicts tests. If Mississippi and California courts would apply different substantive law to Plaintiffs' request for punitive damages, the Court will again be required to balance the interests of each state in having its laws apply and apply the law of the state with greater interests. *See Boardman Petroleum, Inc.*, 135 F.3d at 753-54; *Bott*, 441 F.2d at 900.

As with Plaintiffs' claim for tortious interference with business opportunity, the Court finds that a Mississippi court would apply Texas law to Plaintiffs' claims for punitive damages. *See* discussion of Mississippi's conflicts test, *supra*. Applying the "center of gravity/most significant relationship" test, a Mississippi court would find significant that the conduct giving rise to this suit occurred predominantly in Texas, and that the two Defendants with which Plaintiffs had the most interaction, Defendants Clark and Frank, are Texas residents. *See* Second Amended Complaint; *see also* Defs' Appx. at 57, 186-88; Pls' Bf. in Resp. at 25.

Similarly, the Court finds that a California court would apply Texas law to Plaintiffs' request for punitive damages. In making choice of law decisions, California courts apply the "governmental interest" test. *Offshore Rental Co., Inc. v. Cont'l Oil Co.*, 22 Cal.3d 157, 161 (Cal. 1978). Under this approach, relevant contacts are not disregarded, but are examined in

connection with an analysis of the interests of the involved states, the character of the tort, and the relevant purposes of the tort rules under consideration. *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 731 (Cal. Ct. App. 1972). The "governmental interest" analysis has three steps. *JP Morgan & Co. v. Superior Court,* 113 Cal.App.4th 195, 210 (Cal. Ct. App. 2003). First, the court identifies the applicable rule of law. *Id.* Next, if the applicable law differs, the court considers the interest each state has in having its own law applied to the case. *Id.* If each state has an interest, the court must then consider which state's interest would be more impaired if the law were not applied, and apply the law of the state causing the least impairment. *Id.*

With respect to exemplary damages, the Court finds that California has an interest in deterring fraud against its residents and providing compensation to residents harmed by fraud, as Plaintiffs are California residents and STN was incorporated in California. *See Kasel,* 24 Cal.App.3d at 734; *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994). The Court also finds Texas has an interest in application of its law to this matter. Defendants Frank and Clark are Texas residents, and Texas has an interest in ensuring these individuals are punished reasonably for their conduct, which occurred predominantly within Texas' borders. *See Offshore Rental Co., Inc.*, 22 Cal.3d at 163-64.

Having found that both Texas and California have an interest in applying their law regarding punitive damages, the Court must now consider which state's interest would be more impaired if the law were not applied. *See JP Morgan & Co.,* 113 Cal.App.4th at 210. Considering the principles and purposes behind California and Texas laws regarding exemplary damages, the Court finds that Texas' interest would be most impaired if its law were not applied. Texas cases demonstrate that Texas limits punitive damages to serve the public policy interest of

using punitive damages as punishment rather than compensation for plaintiff by having punitive damages related to the total amount of harm that occurred as reflected by the damages awarded by the jury. *I-Gotcha, Inc. v. McInnis*, 903 S.W.2d 829, 839 (Tex. App.—Fort Worth 1995, writ denied); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 758 (Tex. App.—Houston [14th Dist] 1998, no pet.) (statutory cap on punitive damages affects public punishment interests and does not infringe upon constitutional rights of plaintiff to open court, due process, and trial by jury). The Court finds that Texas' interest in ensuring its resident defendant are subject to reasonable punishment would be impaired by application of California law, which does not limit punitive damage awards. The Court also finds that while California courts have held that California has an interest in providing compensation to Plaintiffs by allowing punitive damages, impairment to this interest is less than the impairment that would result to Texas' interest from application of California's exemplary damage law. The Court finds it significant that the conduct giving rise to Plaintiffs' injury occurred predominantly in Texas. *See* Second Amended Complaint; Defs' Appx. at 57, 186-88; Pls' Bf. in Resp. at 25. Under similar circumstances, California courts have resolved competing interests in favor of application of the law of the foreign jurisdiction. *See Offshore Rental Co.*, 22 Cal.3d at 168 (concluding that Louisiana, not California law, should govern where plaintiff was a California resident, but the tort occurred in Louisiana); *Arno*, 32 F.3d at 1467-68 (applying foreign law regarding punitive damages where virtually all relevant conduct occurred outside California). In addition, some California courts have noted that damages limitations are intended to protect defendants from large verdicts, and not to limit the compensation of plaintiffs. *Marsh v. Burrell*, 805 F.Supp. 1493, 1498 (N.D. Cal. 1992); *Hurtado v. Superior Court*, 11 Cal.3d 583, 583-84

21

(Cal. 1974). Accordingly, the Court finds that California's interests would be less impaired by application of Texas law than Texas would be if California law were applied and concludes that Texas law applies to Plaintiffs' request for punitive damages.

D. **Summary of Applicable Law**

In sum, the Court finds that Texas law applies to Plaintiffs' claim for tortious interference with a business opportunity, while Mississippi law applies to Plaintiffs' claim for tortious interference with a contract. In addition, California law applies to Plaintiffs' fraud and aiding and abetting claims, while Texas law applies to Plaintiffs' request for punitive damages.

The Court now considers whether, in light of the applicable law, Defendants are entitled to summary judgment.

V. Summary Judgment

Defendants have moved for summary judgment on all of Plaintiffs' claims. *See generally* Defs' Mot. Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court finds that Defendants have failed to establish that no genuine issue of material fact exists in this case. FED. R. CIV. P. 56(c). When resolving all reasonable doubts and inferences in the light most favorable to Plaintiffs, the Court finds that Defendants' Motion for Summary Judgment should be and is hereby **DENIED**.

VI. Conclusion

For the foregoing reasons, the Court hereby **DENIES** the Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Partial

Judgment on the Pleadings for Failure to State a Claim Upon Which Relief Can Be Granted or, in the Alternative, Failure to Plead Fraud With Particularity (Doc. # 93), and Joint Motion of Telephone Electronics Corporation, Joseph D. Fail, Walter J. Frank, Jr., and Cloyce C. Clark, Jr. for Summary Judgment (Doc. # 112).

**SO ORDERED** on this **26**th day of **September, 2008.**

Reed O'Connor
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**